**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRENDA GLERUM,

     Plaintiff,

v.

TRINITY HEALTH-MICHIGAN
D/B/A MERCY HEALTH
PHYSICIAN PARTNERS
SABLE POINT URGENT CARE,

     Defendants.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiff Brenda Glerum ("Plaintiff"), by and through the undersigned attorneys, and state the following:

## INTRODUCTION

1.    Brenda Glerum was terminated by Defendant after requesting a religious accommodation to be exempt from Defendant's COVID-19 vaccine mandate.  Ms. Glerum timely submitted a request, but this brave, frontline pandemic healthcare worker was advised on September 15, 2021 that her submission was "cancelled" because it was submitted incorrectly. Ms. Glerum was told to either abandon her religious accommodation beliefs and receive the vaccine or be terminated.  Despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation

1

is based on sincerely held religious belief, practice, or observance," Defendant did the opposite.  Defendant terminated Ms. Glerum based on Defendant's subjective standard of religiosity and its apparent administrative failures.  This occurred after Defendant overworked Ms. Glerum for years without lawfully paying her overtime wages for all hours worked by forcing her to work through unpaid lunches and doctoring her payroll records.

2.       "An arbitrary deadline does not protect an employer from its obligation to provide a religious accommodation. An employer must consider, at the time it receives a request for a religious accommodation, whether the request can be granted without undue burden." Press Release, Mission Hospital Sued by EEOC For Religious Discrimination, Equal Emp. Opportunity Comm'n (April 28, 2021).

3.       A factually analogous matter was litigated in *Eq. Empl. Opportunity Comm'n v. Mission Hospital, Inc*., No. 16-cv-00118, 2017 WL 3392783 (W.D.N.C. Aug. 7, 2017), where the defendant terminated the plaintiffs for "failing to follow its accommodation procedure for religious exemptions for the flu shot vaccination." *Id*. at *1. The *Mission Hospital, Inc*. court, in denying the defendant's motion for summary judgment, stated:

> This is not a case of whether the defendant hospital did or did not believe the claimant's religious beliefs. Instead, it rejected requests for religious accommodations because they did not meet a prescribed deadline. At this stage in the proceeding, the court will assume—taking all facts in plaintiff's favor—that a prima facie case can be satisfied. That is, the claimants had sincerely held beliefs, communicated those beliefs to the employer, and adverse employment action was then taken for that reason.

4.       Ms. Glerum, like the plaintiffs in *Mission Hospital, Inc*., had sincerely religious held beliefs, communicated those beliefs to Defendant, and was termianted for that reason.

**PARTIES, JURISDICTION, AND VENUE**

5.       Brenda Glerum resides in Ludington, Michigan.

6.      Defendant Trinity Health-Michigan d/b/a Mercy Health Physician Partners Sable Point Urgent Care is a domestic for-profit corporation incorporated in Michigan.

7.      The Western District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") and Fair Labor Standards Act ("FLSA") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant is incorporated and where the incidents described in this Complaint took place.

9.      Plaintiff received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC") on September 19, 2022.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

10.     Defendant announced its COVID-19 vaccination mandate on July 8, 2021.

11.     The deadline for employees to receive the first dose of the vaccine was September 21, 2021.

12.     The employees were to submit exemption requests or proof of vaccination by August 20, 2021.

### Plaintiff's Religious Accommodation Requests

13.     On August 19, 2021, one day before the deadline, Plaintiff submitted a religious accommodation request.

14.     Plaintiff cogently illustrated her religious beliefs to Defendant, stating in pertinent part:

3

> I am writing to request a religious exemption from the COVID-19 vaccine…The choice to receive the vaccine or not is mine to make and the only one that I have to answer to in the end…is my God and Savior. After much research and prayer, I have made the choice not to get the vaccine…My body is the Temple of the Holy Spirit and we, as Christians, are compelled to protect it from defilement.

15. On August 19, 2021, Plaintiff received a confirmation number on Defendant's submission system after submitting her religious accommodation request.

16. While Plaintiff's religious objection to the vaccine was clear, a series of administrative mishaps culminated in her exemption request being "cancelled" while she was on a protected leave of absence.

17. Less than one week after Plaintiff submitted her religious accommodation request, Office Manager Laurel Sawyer asked why Plaintiff had not submitted one.

18. Plaintiff assured Ms. Sawyer that she had submitted a religious accommodation request before the deadline and showed her evidence of the same.

19. After this conversation, Ms. Sawyer was clearly aware that Plaintiff submitted a religious accommodation request before the deadline and would like an exemption from the vaccine.

20. Approximately three weeks after submitting her religious accommodation request, and two weeks following this interaction, Ms. Sawyer asked Plaintiff why she did not submit a religious accommodation request once again.

21. Plaintiff immediately provided evidence that she submitted a religious accommodation request for the second time.

22. On September 15, 2021, Plaintiff received the following response from "Celeste H." to her request:

> The religious exemption request was cancelled because it was

4

opened without the required information. The religious exemption request form was not attached…The deadline to submit your exemption request was August 20, 2021. Since that date, the link for the exemption request has been removed. You now have until September 21, 2021 to submit proof of full vaccination.

23.    Plaintiff had not been informed her request was submitted incorrectly the prior month.

24.    Plaintiff informed Defendant that she submitted her accommodation request prior to Defendant's internal, arbitrary deadline.

25.    Defendant never informed Plaintiff that her accommodation request had been improperly submitted or that she would be disqualified for religious accommodation consideration after she submitted the original request.

26.    Regardless, Plaintiff was told that no further accommodation requests would even be considered because Defendant's internal, arbitrary deadline had passed.

27.    This deadline was arbitrarily set by Defendant based on no statutory laws or administrative requirements.

28.    Defendant failed to engage in the interactive process with Plaintiff by failing to assist her in "correctly" submitting her request or discussing potential accommodations.

29.    On October 1, 2021, Ms. Sawyer emailed Plaintiff an offer for a "two-week grace period," in which Plaintiff needed to "take action by either receiving dose one of a two shot COVID-19 vaccination series, or by receiving the Johnson and Johnson COVID-19 vaccination within this two-week grace period."

30.    Ms. Sawyer never offered Plaintiff an opportunity to resubmit her religious accommodation request.

31.    Ms. Sawyer demanded that Plaintiff abandon her religious beliefs to avoid

termination.

32.     There was no religious accommodation interactive process.

33.     Defendant has no justification for administratively mishandling Plaintiff's religious accommodation request.

34.     Defendant's refusal to allow Plaintiff to resubmit her religious accommodation request or to review her "cancelled" request demonstrates an animosity and discrimination against religious beliefs.

35.     On October 20, 2021, Defendant terminated Plaintiff as a direct and proximate cause of its religious discrimination.

36.     Plaintiff was not recognized for her years or service, or for the fact that she risked her life as a frontline worker during the pandemic.

37.     Under the law, religious practices "*include moral or ethical beliefs as to what is right and wrong* which are sincerely held with the strength of traditional religious views."  29 C.F.R. § 1605.1.

38.     Defendant in effect assumed insincerity when the opposite should have been true – see Guidance, *supra* ("*[T]he employer should ordinarily assume* that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance.")

39.     The fact that an employee submits to some vaccines but not others in no way negates the sincerity of his or her beliefs.  See *id.*  ("[E]mployees need not be scrupulous in their observance."); *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981) (holding that religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others" to merit protection).

40.     Plaintiff worked safely and successfully for Defendant prior to its vaccine mandate.

41.     There are a host of reasonable accommodations that Defendant failed to consider.

42.     Plaintiff could have tested daily to confirm whether she was not ill.

43.     Plaintiff could have engaged in frequent sanitizing and disinfecting.

44.     Plaintiff could have worn gloves and respirators in the workplace.

45.     Defendant made employees work in-person throughout the pandemic.

46.     Before any vaccine was developed, the following safety measures were deemed sufficiently effective to protect employees, patients, and their loved ones: testing, enhanced sanitation measures including handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

47.     Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework.  U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

48.     "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted."  *Id*.

49.     Defendant's proffered explanation for not granting Plaintiff's accommodation request does not pass muster, as Ms. Sawyer received confirmation of submission twice. In effect, Defendant did not explain to Plaintiff why her accommodation requests could not be granted.

50.     Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965).  Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

51.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).  "Bilateral cooperation is appropriate in the search for an

acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

52.     Defendant's accommodation process was arbitrary.

53.     Defendant did not explore available reasonable alternatives to the vaccine.

**Defendant Did Not Base Its Decision on Undue Hardship,
Nor Could It Establish Undue Hardship**

54.     The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

55.     The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978).

56.     An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975).  The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

57.     Here, Defendant cannot satisfy its burden of proving undue hardship.

58.     Defendant's allegations are based in religious animus rather than science.

59.     Plaintiff was not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

60.     Plaintiff was more than willing to comply with all safety protocols.

61.     Any allegation of undue hardship lacks scientific backing and, in fact, directly contravene scientific evidence supporting the effectiveness of practices such as handwashing and wearing respirators in preventing infection and death.  Stella Talic et al., *Effectiveness of public*

*health measures in reducing the incidence of covid-19, SARS-CoV-2 transmission, and covid-19*

*mortality: systematic review and meta-analysis*, Brit. Med. J (2021).

62.     Plaintiff had been engaging in these alternative practices, which had been deemed

effective throughout the pandemic for approximately eighteen (18) months before the mandate.

**Defendant Deprived Plaintiff of Overtime Pay**

63.     Plaintiff and other Medical Assistants were not compensated for overtime hours

despite working over forty (40) hours a week.

64.     Defendant's Medical Assistants in "Family Care" were told to cover Defendant's

Urgent Care Medical Assistants during the lunch period, but often times did not so.

65.     As a result, Plaintiff and other Medical Assistants were unable to eat during their

shifts and were forced to work unpaid lunch breaks.

66.     When Plaintiff and other Medical Assistants would work outside of normal

business hours, their supervisors would retroactively adjust their time records, effectively

depriving them of overtime.

67.     Plaintiff and other Medical Assistants were unlawfully deprived of overtime

compensation for all hours worked over forty (40) per week, contrary to the Fair Labor Standards

Act, 29 U.S.C. § 201, et seq. ("FLSA").

**COUNT I**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e,** *et seq.*
**RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE**

68.     Plaintiff restates the foregoing paragraphs as set forth fully herein.

69.     Title VII prohibits an employer from discriminating against an employee "because

of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  Title VII's definition of "religion"

includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

70.     Plaintiff can establish *prima facie* cases of discrimination by showing (1) she holds sincere religious beliefs that conflict with an employment requirement; (2) she informed her employer of same; and (3) she was disciplined for failing to comply with the employment requirement." *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

71.     Plaintiff holds sincere religious beliefs that conflict with Defendant's vaccine mandate.

72.     Plaintiff informed Defendant of the same.

73.     Plaintiff was disciplined for failing to comply with the vaccine mandate.

74.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

75.     Defendant could have instituted multiple reasonable accommodations without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and regular testing.

76.     Defendant never explained why Plaintiff could not be accommodated.

77.     Defendant never explained why no accommodations could have worked.

78.     Due to her termination, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith; and Plaintiff will continue to suffer in the future.

79.     Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of health insurance coverage, and suffered a loss of and impairment of their earning capacity and ability to work.

80.     Defendant's actions were intentional and/or reckless.

## COUNT II
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
## RELIGIOUS DISCRIMINATION–RETALIATION

81.    Plaintiff restates the foregoing paragraphs as set forth fully herein.

82.    It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

83.    Plaintiff engaged in protected activity when she requested accommodations from Defendant's vaccine mandate due to their religious beliefs.

84.    Defendant subsequently retaliated against Plaintiff by terminating her.

85.    Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct, and she will continue to suffer in the future.

86.    Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of and impairment of her earning capacity and ability to work because of Defendant's retaliatory conduct, and she will continue to suffer in the future.

87.    Defendant's actions were intentional and/or reckless.

## COUNT III
## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")
## RELIGIOUS DISCRIMINATION

88.    Plaintiff restates the foregoing paragraphs as set forth fully herein.

89.    Plaintiff holds sincere religious beliefs that conflict with Defendant's vaccine mandate.

90.    Plaintiff informed Defendant of same.

91.    Plaintiff was terminated for failing to comply with Defendant's vaccine mandate.

92.    Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v.*

*Philbrook*, 479 U.S. 60, 69 (1986).

93.    Defendant could have instituted multiple reasonable accommodations without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and regular testing.

94.    Defendant never explained why it could not accommodate Plaintiff.

95.    Defendant never explained why no accommodations could have worked.

96.    Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of Defendant's denial of their requests, and Plaintiff will continue to suffer in the future.

97.    Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of health insurance coverage, and suffered a loss of and impairment of their earning capacity and ability to work because of Defendant's denial of their requests.

98.    Defendant's actions were intentional and/or reckless.

**COUNT IV**
**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**RELIGIOUS DISCRIMINATION–RETALIATION**

99.    Plaintiff restates the foregoing paragraphs as set forth fully herein.

100.    It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

101.    Plaintiff engaged in protected activity when she requested accommodations.

102.    Defendant retaliated against Plaintiff by improperly terminating her.

103.    Defendant, by denying Plaintiff's Requests for Accommodation, clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

104. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct and will continue to suffer in the future.

105. Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, and suffered a loss of and impairment of her earning capacity and ability to work because of the retaliatory conduct, and she will continue to so suffer in the future.

106. Defendant's actions were intentional and/or reckless.

**COUNT V**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938 ("FLSA")**
**UNPAID OVERTIME WAGES**

107. Plaintiff incorporates the allegations in the foregoing paragraphs.

108. Plaintiff is a former "employee" within the meaning of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*.

109. Defendant was and continues to be an "enterprise engaged in interstate commerce or in the production of goods" within the meaning of 29 U.S.C. § 203.

110. Plaintiff was unlawfully deprived of proper overtime compensation for hours worked in excess of forty (40) per week.

111. Plaintiff was consistently forced to work during her unpaid lunch break.

112. Upon information and belief, when Plaintiff would work outside of normal business hours, her supervisor would retroactively alter her time records to deprive her of overtime pay.

113. Defendant's conduct in this regard was knowing and willful.

114. Plaintiff was deprived of earned wages in amounts to be determined at trial. Plaintiff is entitled to compensation for unpaid overtime wages, interest, liquidated damages, attorneys' fees and costs, and any other remedies available at law or in equity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a.      Compensatory damages for monetary and non-monetary loss;

b.      Exemplary, liquidated, and punitive damages;

c.      Prejudgment interest;

d.      Reasonable attorney's fees; and

e.      Such other relief as in law or equity may pertain.

Respectfully Submitted,
HURWITZ LAW, PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiff
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

Dated: October 19, 2022

14

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRENDA GLERUM,

    Plaintiff,

v.

TRINITY HEALTH-MICHIGAN
D/B/A MERCY HEALTH
PHYSICIAN PARTNERS
SABLE POINT URGENT CARE,

    Defendants.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

    Plaintiff Brenda Glerum ("Plaintiff"), by and through her attorneys Hurwitz Law, PLLC,

hereby demand a trial by jury, for all issues so triable.

                Respectfully Submitted,
                HURWITZ LAW, PLLC

                /s/ *Noah S. Hurwitz*
                Noah Hurwitz (P74063)
                Attorney for Plaintiff

Dated: October 19, 2022

15